**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ERNEST KANEVSKIY** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **Case No. 1:21-cv-491-RP** |
| | § | |
| **GOOGLE LLC, d/b/a YouTube** | § | |
| | § | |
| **Defendant.** | § | |
| | § | |
| | § | |

## <u>DEFENDANT'S MOTION TO DISMISS</u>

Defendant Google LLC ("Google") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss the claims asserted by Plaintiff Ernest Kanevskiy ("Plaintiff") in his Original Petition filed in state court, ECF No. 4-1 (hereinafter the "Complaint"). In support thereof, Google respectfully shows as follows:

## INTRODUCTION

Plaintiff joins a long list of claimants properly removed from Google's YouTube platform for refusing to follow community guidelines.  As explained below, a growing body of law disposing of similar lawsuits establishes that Plaintiff's claims should be dismissed for three independent reasons:

*First*, Section 230 of the Communications Decency Act (47 U.S.C. § 230) (hereinafter "Section 230") immunizes Google from liability "under any State or local law," *id.* at (e)(2), that "attempts to hold [a service provider] liable for decisions relating to the monitoring, screening, and deletion of content from its network." *Doe v. MySpace, Inc.*, 528 F.3d 413, 420 (5th Cir. 2008) (quoting *Green v. Am. Online (AOL)*, 318 F.3d 465, 471 (3d Cir. 2003)).  Yet that is precisely what Plaintiff seeks to do—hold Google liable under state law for its editorial decision to remove Plaintiff's channel and videos from YouTube.  Section 230 prohibits that attempt.

*Second*, finding in favor of Plaintiff on his claims, including in particular a request for injunctive relief "requir[ing] [Google] to restore Plaintiff's YouTube channel and videos to the state they were in on February 2nd, 2021," Compl. at 15 ¶ (A), would blatantly violate the First Amendment—allowing Plaintiff, under power of court order, to override Google's "exercise of editorial control and judgment." *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974). For this reason too, Plaintiff's claims should be dismissed in their entirety.

*Third*, in addition to Google's Section 230 immunity and First Amendment rights, it is apparent from the face of Plaintiff's Complaint that the parties' contract authorized Google to take each of the actions alleged, meaning Plaintiff fails to state any plausible claim.  Under California law, which governs the parties' agreement, "if defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 826 P.2d 710 728 (Cal. 1992) (quotations omitted).

**DEFENDANT'S MOTION TO DISMISS**                                                    **Page 1**

## BACKGROUND

### I.   The YouTube Service.

YouTube "is an internet platform" maintained and operated by Google, that allows users to view and share videos online (the "Service").  Compl. ¶¶ 4, 7.  Users can view videos on YouTube without registration, but "[i]n order to upload content on YouTube, users must have a Google account and then create a 'channel' to display their content."  *Id.* at ¶ 11.  Regardless of whether users view or upload content, or both, they must agree to YouTube's Terms of Service (the "TOS") to use the Service.  *See id.* at ¶ 18; Ex. 1-A at 3.[1]  Plaintiff alleges that Google terminated his channel and removed his content on February 3, 2021, Compl. ¶ 6, meaning the TOS in effect from November 18, 2020 to March 17, 2021 is the applicable version.  *See* Ex. 1-A at 15.[2]

As stated in the TOS, "use of the Service is subject to these terms, the YouTube Community Guidelines and the Policy, Safety and Copyright Policies which may be updated from time to time."  *Id.* at 3.[3]  If users "provide advertising or sponsorships to the Service or incorporate paid promotions," users also agree to the "Advertising on YouTube Policies."  *Id.*[4]  Users who "do not understand" the TOS or referenced policies, "or do not accept any part of [them] . . . may not use the Service."  *Id.*

---

[1] The Terms of Service that Google allegedly breached, filed herewith as **Exhibit 1-A**, provide that "[a]ll claims arising out of or relating to these terms or the Service will be governed by California law." Ex. 1-A. at 15.

[2] As provided in the prior version of the TOS, Google can modify the TOS at any time, and users who continue their use agree to be bound by such modifications.  *See Terms of Service*, YOUTUBE (Dec. 10, 2019), https://www.youtube.com/t/terms?archive=20191210.

[3] The YouTube Community Guidelines and Policy, Safety and Copyright Policies are hyperlinked in the TOS. Together with the TOS, these agreements are sometimes referred to as the "Agreement" in the TOS, and hereinafter in this Motion.  *See id.*

[4] The Advertising on YouTube Policies are also hyperlinked in the TOS.

**DEFENDANT'S MOTION TO DISMISS**                                                    **Page 2**

## II.     The TOS gives Google broad discretion to screen content and users on YouTube.

Google enjoys broad discretion over the users and content on its YouTube platform.  Under the TOS, "Content is the responsibility of the person or entity that provides it to the Service," and Google "is under no obligation to host or serve Content."  *Id.* at 4.[5]  Users who "choose to upload Content . . . must not submit to the Service any Content that does not comply with th[e] Agreement (including the YouTube Community Guidelines) or the law."  *Id.* at 7–8.  If Google "reasonably believe[s] that any Content is in breach of th[e] Agreement or may cause harm to YouTube . . . users, or third parties, [Google] may remove or take down that Content in [Google's] discretion."  *Id.* at 9.

The TOS also allows Google to "suspend or terminate" access to the Service, or a User's Google account, for several reasons.  Those reasons include when a user "materially or repeatedly breach[es] th[e] Agreement," *id.* at 10, and when Google believes, "in its sole discretion, that provision of the Service to [users] is no longer commercially viable."  *Id.* at 11.  If terminated for one of these reasons, Google "will notify" users "with the reason for termination," unless Google reasonably believes that doing so: "(a) would violate the law or the direction of a legal enforcement authority, or would otherwise risk legal liability for YouTube or our Affiliates; (b) would compromise an investigation or the integrity or operation of the Service; or (c) would cause harm to any user, other third party, YouTube or our Affiliates."  *Id.*

The YouTube Community Guidelines, filed as **Exhibit 1-B**, incorporate several policies that, filed as **Exhibit 1-C**, that further prohibit a wide range of Content that Google finds objectionable, including "[p]ranks that lead victims to fear imminent serious physical danger, or that create serious emotional distress in minors."  Ex. 1-C at 1.  As to enforcement, the Community

---

[5] As defined in the TOS, "Content" includes "videos, audio . . . graphics, photos, text . . . branding . . . interactive features, software, metrics and other materials."  *Id.* at 4.

Guidelines give Google the right to "terminate [a] channel or account for repeated violations of the Community Guidelines or Terms of Service," or "after a single case of severe abuse, or when the channel is dedicated to a policy violation." *Id.* at 5.

### III.     The TOS limit Google's liability for removed Content.

The TOS also contain several relevant provisions under which users like Plaintiff disclaim certain warranties and claims as part of their use of the Service.  For example, Google makes no:

> WARRANTIES ABOUT: (A) THE CONTENT PROVIDED THROUGH THE SERVICE . . . OR (C) THAT ANY CONTENT YOU SUBMIT WILL BE ACCESSIBLE ON THE SERVICE.

*Id.* at 12.  The TOS also provides that Google:

> WILL NOT BE RESPONSIBLE FOR ANY LOSS OF PROFITS, REVENUES, BUSINESS OPPORTUNITIES, GOODWILL, OR ANTICIPATED SAVINGS; LOSS OR CORRUPTION OF DATA; INDIRECT OR CONSEQUENTIAL LOSS; PUNITIVE DAMAGES CAUSED BY: . . .
>
> ANY INTERRUPTION OR CESSATION OF THE SERVICE . . . ANY CONTENT WHETHER SUBMITTED BY A USER OR YOUTUBE, INCLUDING YOUR USE OF CONTENT [OR] . . .
>
> THE REMOVAL OR UNAVAILABILITY OF ANY CONTENT.

*Id.* at 12–13.  In short, the TOS disclaims any obligation that a user's Content will be available on YouTube, and users disclaim any claims arising out of the removal of their Content.  *See id.*

### IV.     Plaintiff's channel violates the Agreement.

Plaintiff is an individual residing in Austin, Texas.  Compl. ¶ 6.  In 2012, he "created a YouTube channel called 'Kanevskiy Fitness.'"  Compl. ¶ 6.  And, as he concedes, to do so "he entered into the TOS contract" with Google.  *Id.*  Plaintiff's "channel originally focused on fitness training," but "Plaintiff hit a plateau with his fitness channel and could not get above 100,000 subscribers."  *Id.* at ¶ 8.  He therefore "started doing prank videos," *id.*, an admission of his violation of the Community Guidelines.  *See* Ex. 1-C at 1.

**DEFENDANT'S MOTION TO DISMISS**                                              **Page 4**

Consistent with those Community Guidelines and the TOS, "[o]n February 3, 2021 [Google] notified Plaintiff . . . that his channel had been removed from YouTube 'due to . . . severe violations of our Community Guidelines.'" Compl. ¶ 6; *see also* Ex. 1-C at 5 (allowing Google to terminate a channel "for repeated violations of the Community Guidelines or Terms of Service" or "after a single case of severe abuse").

Based on that legitimate termination, Plaintiff asserts claims for:

- Breach of contract and breach of the covenant of good faith and fair dealing, *see* Compl. ¶ 39;

- Unjust enrichment, *id.* at ¶ 38

- Violations of the Texas DTPA, *see id.* at ¶ 43; and

- Tortious interference with the TOS and tortious interference with prospective economic advantage and contract. *Id.* at ¶¶ 51, 55.

He also requests mandatory injunctive relief—specifically to "require [Google] to restore Plaintiff's YouTube channel and videos to the state they were in on February 2nd, 2021." *Id.* at 15 ¶ (A). However, taking the factual allegations in the Complaint as true, Plaintiff fails to state a claim upon which such relief can be granted and dismissal with prejudice is appropriate.

## STANDARD OF REVIEW

Under the Federal Rules of Civil Procedure, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Luna v. Collier*, No. A-20-CV-685-RP, 2021 WL 466141, at *4 (W.D. Tex. Feb. 9, 2021) (Pitman, J.) (quoting Fed. R. Civ. P. 8(a)(2)).  "To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead sufficient facts to state a claim for relief that is plausible on its face." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  While the court "will accept all well-pleaded facts as true . . . '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* (quoting *Iqbal*

556 U.S. at 679).  The court will "not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020).

In addition to allegations, "when ruling on Rule 12(b)(6) motions to dismiss," courts also take into consideration "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Basic Cap. Mgmt., Inc. v. Dynex Cap., Inc.*, 976 F.3d 585, 589 (5th Cir. 2020) (quotations omitted).  Facts from those sources "generally trump contradictory allegations in the complaint."  *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 441 (5th Cir. 2015).

In this case, Plaintiff elected to file suit *pro se*.  While a "*pro se* complaint is to be construed liberally with all well-pleaded allegations taken as true," even a liberally construed complaint "must set forth facts giving rise to a claim on which relief may be granted."  *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993).  As set out below, Plaintiff has not and cannot do so here.

## ARGUMENT

## I.   Section 230 immunizes Google against Plaintiff's claims.

Google's editorial decision to remove content finds immunity under Section 230, as courts within the Fifth Circuit and across the country have recognized.   In relevant part, Section 230 provides that:

> No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider [and]
>
> No provider or user of an interactive computer service shall be held liable on account of—(A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected . . .

47 U.S.C. § 230(c)(1)–(2)(A).  An "information content provider," includes "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  *Id.* at (f)(3).  And an "interactive computer service" means "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet."  *Id.* at (f)(2).

"A majority of federal circuits have interpreted § 230 'federal immunity' to be rather broad."  *Diez v. Google, Inc.*, 831 F. App'x 723, 724 (5th Cir. 2020).  As such, courts should "aim to resolve the question of § 230 immunity," like other forms of immunity, "at the earliest possible stage of the case because that immunity protects websites not only from 'ultimate liability,' but also from 'having to fight costly and protracted legal battles.'"  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (quoting *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1175 (9th Cir. 2008)).  Here, it is apparent from the Complaint that Plaintiff's claims fall squarely within the scope of Section 230, and thus must be dismissed.

### A.    Google is an interactive computer service provider.

First, Google, as operator of YouTube, undeniably meets the definition of an "interactive computer service" provider.  As alleged in the Complaint, "YouTube [is a] video sharing platform" available on the internet "to consumers throughout the United States."  Compl. ¶ 7.  The TOS makes clear that YouTube "acts as a distribution platform for original content creators," Ex. 1-A at 2, and that "Content is the responsibility of the person or entity that provides it to the Service."  *Id.* at 4.  Plaintiff even concedes that "YouTube and other social media platforms were given protections by the Government under Section 230."  *Id.* at ¶ 27.

**DEFENDANT'S MOTION TO DISMISS**                                                    **Page 7**

This comports with a substantial body of law. The Fifth Circuit, affirming this Court, held in *Diez v. Google, Inc.*, 831 F. App'x 723 (5th Cir. 2020), that Google's affiliate is "an interactive computer service provider" under Section 230. *Id.* at 725. Courts around the country have consistently held the same regarding Google and YouTube.[6] Plaintiff's claims against Google therefore fail to the extent they fall within the broad scope of immunity outlined by Section 230(c)(1) or (c)(2).

### B.    Google is immune to Plaintiff's non-contract claims under Section 230(c)(1).

"By its plain text, § 230 creates federal immunity to any cause of action that would make internet service providers liable for information originating with a third-party user of the service." *Diez*, 831 F. App'x at 724. As explained by the Fifth Circuit in *Doe v. Myspace, Inc.*, this immunity prohibits "attempts to hold [a service provider] liable for decisions relating to the monitoring, screening, ***and deletion of content*** from its networks—actions quintessentially related to a publisher's role." 528 F.3d at 420 (emphasis added) (quotations omitted); *see also Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). The Complaint, which fundamentally seeks to hold Google liable for "YouTube's screening process," Compl. ¶ 45, and decision to take down Plaintiff's channel, *id.* at ¶¶ 6, 48, runs headfirst into that prohibition.

Three recent decisions involving substantially similar allegations against Google concluded as much and resulted in dismissals. First, in *Lewis v. Google LLC*, 461 F. Supp. 3d 938 (N.D. Cal. 2020), the plaintiff alleged that "YouTube demonetized many of [p]laintiff's videos,"

---

[6] *See Bennett v. Google, LLC*, 882 F.3d 1163, 1167 (D.C. Cir. 2018) ("[A]s many other courts have found, Google qualifies as an 'interactive computer service' provider . . . ."); *Daniels v. Alphabet, Inc.*, No. 20-cv-04687-VKD, 2021 WL 1222166, at *1–2 (N.D. Cal. Mar. 31, 2021) (applying Section 230 to Google and YouTube); *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824, 829 (N.D. Cal. 2020) ("YouTube and Google readily fall within this definition"); *Lewis v. Google, LLC*, 461 F. Supp. 3d 938, 955 N.D. Cal. 2020) ("the Court finds that Defendants provide an interactive computer service").

**DEFENDANT'S MOTION TO DISMISS**                                                    **Page 8**

and "did not compensate [p]laintiff for the revenue he lost from the demonetization," even after the plaintiff won appeals for a portion of the videos. *Id.* at 947. "YouTube also restricted and removed some of [p]laintiff's videos" outright. *Id.* Based on these actions, the plaintiff asserted an array of claims, including for fraud, breach of the implied covenant of good faith and fair dealing, and tortious interference with economic advantage. *Id.* at 950–51.

Granting Google's motion to dismiss, with prejudice, the court observed that "removing or restricting postings," and "demonetization of [p]laintiff's postings," fall "within a publisher's traditional functions." *Id.* Section 230(c)(1) therefore barred the plaintiff's claims because user "videos, and the advertisements from other third parties, constitute 'information provided by another information content provider' under § 230". *Id.* at 955.

Second, in *Enhanced Athlete Inc. v. Google LLC*, 479 F. Supp. 3d 824 (N.D. Cal. 2020), the plaintiff "challeng[ed] Defendants' decisions to remove Plaintiff's videos from YouTube and ultimately terminate Plaintiff's YouTube accounts." *Id.* at 827. The plaintiff "argue[d] that its videos 'were in full compliance with YouTube's Terms of Use and Community Guidelines,'" and filed suit "to stop Defendants from unlawfully censoring its educational and informational videos, and discriminating against its right to freedom of speech, for arbitrary and capricious reasons that are contrary to Defendants' own published Community Guidelines and Terms of Use." *Id.* at 828.

Applying Section 230(c)(1), the court found "that Plaintiff's causes of action for (1) unfair competition; (2) false advertising; and (3) declaratory relief seek to hold Defendants liable as a publisher," and therefore could not proceed. *Id.* at 830. Those claims "challenge[d] Defendants' decision to remove Plaintiff's videos and terminate its accounts," but as the court observed, "removing content is something publishers do, and to impose liability on the basis of such conduct

**DEFENDANT'S MOTION TO DISMISS** **Page 9**

necessarily involves treating the liable party as a publisher"—a tactic proscribed by Section 230(c)(1).  *Id.*

Likewise, in *Daniels .v Alphabet, Inc.*, No. 20-cv-04687-VKD, 2021 WL 1222166 (N.D. Cal. Mar. 31, 2021), Google removed several of the plaintiff's videos "for violating YouTube's Community Guidelines."  *Id.* at *2–3.  The plaintiff sued asserting various claims, including for unjust enrichment, unfair competition, and fraud in the inducement.  *Id.* at *1.  Again, Section 230(c)(1) immunized Google from non-contractual claims.  *Id.* at *12.  Simply put, "YouTube's removal of [a user]'s videos constitutes traditional publishing and editorial activity," and Google enjoys immunity from claims based on those editorial decisions.  *Id.*

So too here.  Plaintiff's claims for unjust enrichment, violation of the Texas DTPA, and interference with prospective and contractual relations, all arise out of Google's publishing functions, namely demonetizing Plaintiff's January 2021 videos, *see* Compl. ¶ 38, applying "YouTube's screening process," *Id.* at ¶ 45, and taking down Plaintiff's "channel . . . in February of 2021".  *Id.* at ¶ 48.  Accordingly, Google is entitled to immunity from such claims under Section 230(c)(1).  *Lewis*, 461 F. Supp. 3d at 955, *Enhanced Athlete*, 479 F. Supp. 3d at 830, and *Daniels*, 2021 WL 1222166, at *12; *see also Manchanda v. Google*, No. 16-CV-3350, 2016 WL 6806250, at *3 (S.D.N.Y. Nov. 16, 2016) (dismissing numerous claims, including for unjust enrichment and tortious interference with contract, because "the CDA immunizes Defendants from liability").  Plaintiff's claims, no matter how couched, cannot escape this bar.

### C.   Google is immune from Plaintiff's claims under Section 230(c)(2).

Google also enjoys immunity from all of Plaintiff's claims, including his breach of contract and breach of implied covenant claims, under Section 230(c)(2).  Described recently by the Second Circuit:

> A broad provision, subsection (c)(2) immunizes interactive computer service providers from liability for 'any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected.'

*Domen v. Vimeo, Inc.*, 991 F.3d 66, 72 (2d Cir. 2021).  "Notably, the provision provides protection for restricting access to content that providers ***consider***[] . . . ***objectionable***."  *Id.* (emphasis added).

In *Domen*, the plaintiffs alleged that Vimeo—an online video platform similar to YouTube—"discriminated against them on the basis of their religion and sexual orientation by deleting [their] account from Vimeo's online video hosting platform."  *Id.* at 68.  Vimeo explained in response that it "does not allow videos that harass, incite hatred, or include discriminatory or defamatory speech," and invoked Section 230(c)(2) in defense.  *Id.* at 69.

Affirming the district court, the Second Circuit concluded that Section 230(c)(2) immunized Vimeo's conduct and the plaintiffs' claims were properly dismissed under Rule 12(b)(6).  As the court observed, "Vimeo is statutorily entitled to consider [user] content objectionable" under Section 230(c)(2), "and may restrict access to that content as it sees fit."  *Id.* at 72.  Moreover, the plaintiff's "allegations that Vimeo acted in bad faith [were] too conclusory to survive a motion to dismiss under Rule 12(b)(6)."  *Id.*  The plaintiffs in *Domen*, much like the Plaintiff here, "argue[d] that bad faith is apparent" from the content of "other videos . . . [that] exist on Vimeo's website."  *Id.*  "However, the mere fact that [plaintiffs]' account was deleted while other videos and accounts discussing [similar content] remain available does not mean that Vimeo's actions were not taken in good faith."  *Id.* at 73.  Indeed, "one purpose of Section 230 is to provide interactive computer services with immunity for removing 'some—but not all—offensive material from their websites.'"  *Id.* (quoting *Bennett v. Google, LLC*, 882 F.3d 1163, 1166 (D.C. Cir. 2018)).  "Given the massive amount of user-generated content available on

**DEFENDANT'S MOTION TO DISMISS**                                          **Page 11**

interactive platforms," like Vimeo and YouTube, "imperfect exercise of content-policing discretion does not, without more, suggest that enforcement of content policies was not done in good faith." *Id.*

A recent decision in California, *Daniels*, 2021 WL 1222166, at *12, similarly interpreted Section 230(c)(2).  The complaint in *Daniels* "contain[ed] no plausible factual allegations suggesting that YouTube did not consider the content of [the plaintiff's] videos objectionable and/or contrary to its stated policies and guidelines, or that it removed, restricted access to, or demonetized the videos in bad faith." *Id.*  The court held that mere "conclusory assertions that YouTube acted in bad faith" are insufficient to avoid the application of Section 230. *Id.*

Plaintiff's Complaint fares no better.  It attempts only to measure the content of Plaintiff's removed videos against other videos that remain on the YouTube platform. *See* Compl. ¶¶ 15, 19. But as in *Domen*, the fact that some other videos "remain available does not mean that . . . actions were not taken in good faith." 991 F.3d at 73.  Notably absent from the Complaint is any mention or description of the content of Plaintiff's own objectionable videos.  And there is nothing to suggest that Google did not, in fact, consider Plaintiff's videos as objectionable "violations of [YouTube's] Community Guidelines."  Compl. ¶ 6.  Plaintiff's lone, conclusory allegation that Google was "not acting in good faith," Compl. ¶ 19, is insufficient. *Daniels*, 2021 WL 1222166, at *12.  Plaintiff therefore cannot avoid the protection provided to Google under Section 230(c)(2). *See id.*

Further, Section 230(c)(2) immunity is not limited to traditional publisher functions like Section 230(c)(1).  Accordingly, courts apply it to all claims—contractual or otherwise. *See Batzel v. Smith*, 333 F.3d 1018, 1030 n.14 (9th Cir. 2003)*, superseded in part by statute on other grounds as stated in Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766–67 (9th Cir. 2017) ("This provision

**DEFENDANT'S MOTION TO DISMISS**                                    **Page 12**

insulates service providers from claims premised on the taking down of a customer's posting such as breach of contract or unfair business practices").   Section 230(c)(2) accordingly provides complete immunity to all of Plaintiff's claims, which should be dismissed.

## II.   The First Amendment protects Google's editorial decisions.

The First Amendment independently protects Google's editorial decisions to remove or demonetize content on its platform—including removal of Plaintiff's channel.   As the Supreme Court observed long ago with respect to newspapers, "[t]he choice of material . . . and the decisions made as to the limitations on the size and content of the paper . . . constitute the exercise of editorial control and judgment."  *Miami Herald Pub. Co. v. Tornillo*, 418 U.S. 241, 258 (1974).

Likewise, "[i]t is well-established that the freedom of speech and association protected by the First Amendment includes the freedom to choose 'both what to say and what *not* to say," and that "[t]his right to refrain from speech is violated when the government compels an individual to endorse a belief that [the speaker] finds repugnant."  *Hays Cty. Guardian v. Supple*, 969 F.2d 111, 123 (5th Cir. 1992) (quoting *Riley v. National Federation for the Blind*, 487 U.S. 781, 797 (1988)). Summarized by the Supreme Court: "*all* speech inherently involves choices of what to say and what to leave unsaid."  *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 11 (1986) (emphasis in original).

Those overlapping protections readily extend to "online publishers," like Google, who "have a First Amendment right to distribute others' speech and exercise editorial control on their platforms." *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 991–92 (S.D. Tex. 2017) (recognizing "Facebook's First Amendment right to decide what to publish and what not to publish on its platform" and dismissing claims); *Zhang v. Baidu.com, Inc.*, 10 F. Supp. 3d 433 (S.D.N.Y. 2014) (dismissing claims because online search engine's "choice not to feature 'pro-democracy

political speech' is protected by the First Amendment").[7] Just as "the courts … should [not] dictate the contents of a newspaper," *Assocs. & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 135 (9th Cir. 1971), the First Amendment does not allow Plaintiff to dictate the contents of Google's YouTube platform under power of court order.

That is exactly what Plaintiff seeks to do. He asserts that Google should face legal liability for its editorial decisions, and seeks an order compelling Google to publish, promote, and monetize his videos—his speech.  Such an intrusion into Google's prerogative to manage its own speech, or refrain from speaking altogether, directly violates Google's First Amendment rights.

## III.   Plaintiff's factual allegations fail to state a claim.

In addition to immunity, the factual allegations in the Complaint fail to state a plausible claim for relief—a separate and independently sufficient basis for dismissal.

### A.   California law governs.

As a threshold matter, California law governs Plaintiff's claims, because the TOS, which Plaintiff concedes established a binding "contractual relationship," Compl. ¶¶ 18, 33, contains a clear and unambiguous choice-of-law provision:

> All claims arising out of or relating to these terms or the Service will be governed by California law, except California's conflict of laws rules . . .

Ex. 1-A at 15.   Federal courts in Texas routinely apply choice-of-law clauses designating California law.  *See Powers v. Litton Indus., Inc.*, 104 Fed. Appx. 399, 401 (5th Cir. 2004) ("the stock option agreements contained an enforceable choice of law provision specifying that California law governs this dispute"); *Jack in the Box Inc. v. San-Tex Restaurants, Inc.*, SA-20-

---

[7] *See also Wash. Post v. McManus*, 944 F.3d 506, 514 (4th Cir. 2019) (Maryland statute that "require[d] online platforms" to post specified content "present[ed] compelled speech problems twice over"); *Publius v. Boyer–Vine*, 237 F.Supp.3d 997, 1008, 2017 WL 772145, at *5 (E.D. Cal. 2017) (owner of a website has a "First Amendment right to distribute and facilitate protected speech").

CV-00328-XR, 2021 WL 148058, at *4 (W.D. Tex. Jan. 14, 2021).[8]  Moreover, the wording of the choice-of-law provision is sufficiently broad to encompass not only Plaintiff's contractual claims, but his non-contractual claims as well.  *See* Ex. 1-A at 15; *VTX Comm'cns, LLC v. AT&T Inc.*, No. 7:19-cv-00269, 2020 WL 4465968, at *4 (S.D. Tex. Aug. 4, 2020).

### B.      Breach of contract and implied covenant of good faith and fair dealing.

"To state a claim for breach of contract under California law, a plaintiff must plead (1) the existence of a contract with the defendant, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damages to plaintiff."  *Daniels*, 2021 WL 1222166, at *7.  "Every contract" in turn "imposes on each party a duty of good faith and fair dealing in performance and enforcement of the contract," a breach of which "involves something beyond the breach of the contractual duty itself."  *Id.* at *3.  "While a plaintiff may bring claims for both breach of contract and breach of the implied covenant, when both claims rely on the same alleged acts and seek the same relief, the Court may disregard the breach of the implied covenant claim as superfluous."  *Id.*

Plaintiff generally alleges that Google "breached the TOS by terminating the Plaintiff's account without cause as defined in the TOS," Compl. ¶ 29, and by "failing to provide a reason for account suspension/termination."  *Id.* at ¶ 30.  Plaintiff bases both his breach of contract and breach of implied covenant claims on the same set of facts, and seeks the same relief.  *See id.* at ¶¶ 36–41.  The "breach of implied covenant claim" should therefore be dismissed out of hand "because it is based on precisely the same allegations as [Plaintiff]'s purported breach of contract claim."  *Daniels*, 2021 WL 1222166, at *3.

---

[8] A federal court exercising diversity jurisdiction—as in the present case—"applies the choice-of-law rules of the state in which it sits."  *Interfirst Bank Clifton v. Fernandez*, 853 F.2d 292, 294 (5th Cir. 1988).  In turn, "Texas choice-of-law rules recognize valid choice-of-law clauses."  *Id.*

Regardless, the terms of the TOS and Plaintiff's own Complaint contradict Plaintiff's assertions.  Under the TOS: (1) Google "is under no obligation to host or serve Content," Ex. 1-A at 4; (2) can remove "in its discretion" any Content that it "reasonably believe[s] . . . may cause harm to YouTube . . . users, or third parties, *id.* at 9; and (3) can "suspend or terminate" access to the Service, or a User's Google account when a user "materially or repeatedly breach[es] th[e] Agreement" or when Google believes, "in its sole discretion, that provision of the Service to [users] is no longer commercially viable." *Id.* at 10–11.

As in *Daniels*, "[t]he express terms of the alleged contract" therefore "contradict [any] claim that the Terms of Service permit YouTube to remove content only in the event that content violates the Community Guidelines." 2021 WL 1222166, at *8. And "[b]ecause defendants were given the right to do what they did by the express provisions of the contract there can be no breach." *Id.* (quotations omitted).

That aside, the Complaint also makes clear that Google did terminate Plaintiff's channel for cause. Under the Community Guidelines, Google can "terminate [a] channel or account for repeated violations of the Community Guidelines or Terms of Service," or "after a single case of severe abuse, or when the channel is dedicated to a policy violation," including, for example, "[p]ranks that lead victims to fear imminent serious physical danger, or that create serious emotional distress in minors." Ex. 1-C at 1.

The Complaint concedes that Plaintiff dedicated his channel to "prank videos," Compl. ¶ 8, and that Google terminated his channel "due to repeated or severe violations of our Community Guidelines." *Id.* at ¶ 6. Once again, Google had the right to take this action under the express terms of the Agreement, meaning Plaintiff has no claim for breach of contract or implied covenant.

**DEFENDANT'S MOTION TO DISMISS**                                    **Page 16**

*See id.*; *Daniels*, 2021 WL 1222166, at *8; *Lewis*, 461 F. Supp. 3d at 962; *Enhanced Athlete*, 479 F. Supp. 3d at 833.

Plaintiff's claim that Google breached the TOS "by failing to provide a reason for account suspension/termination" fails for the same reasons.  Google ***did*** give Plaintiff the reason for termination ("repeated or severe violations" of Community Guidelines), and in any event, the TOS does not contain "an unqualified promise to notify [users] when one of [their] videos is flagged or removed."  *Daniels*, 2021 WL 1222166, at *8.

### C.    Unjust Enrichment.

"To state a claim for unjust enrichment under California law, a plaintiff must allege the receipt of a benefit and the unjust retention of the benefit at the expense of another."  *Id.* at *10. "Courts have repeatedly held that a plaintiff may not plead the existence of an enforceable contract and simultaneously maintain a quasi-contract claim unless the plaintiff also pleads facts suggesting that the contract may be unenforceable or invalid."  *Id.* (quoting *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 133 (N.D. Cal. 2020) (listing cases)).

Here, the Complaint concedes—indeed, it relies primarily upon—the existence of an enforceable contract governing the relationship between Plaintiff and Google.  *See* Compl. ¶¶ 11,33.  Plaintiff therefore cannot advance his unjust enrichment claim.  *See id.*

### D.    Deceptive trade practices.

Plaintiff's claim for discrimination in violation of the Texas DTPA fails because the Texas DTPA has no application here.  As discussed above, California law governs any claim arising out of or relating to the Agreement or the Service.  This "explicit choice" of another forum's law "precludes [plaintiff's] reliance on Texas' Deceptive Trade Practice Act."  *Albaugh Chem. Corp. v. Occidental Electrochemicals Corp.*, 4 F.3d 989, at *2 (5th Cir. 1993).

And in any event, the Complaint makes clear that: (1) Plaintiff did not purchase or lease the Service, which was provided gratuitously, *see Rayford v. Maselli*, 73 S.W.3d 410, 411 (Tex. App.—Houston [1st Dist.] 2002, no pet.); and (2) the TOS waives and disclaims any warranties with respect to the Service, which is provided as-is.  *See* Ex. 1-A at 12–13.  In short, Plaintiff would have no DTPA claim even if such a claim was considered.

### E.    Tortious interference with prospective economic advantage and with contract.

"Under California law, the elements of the tort of intentional interference with contractual relations are: '(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.'" *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (quoting *Pac. Gas & Elec. Co. v. Bear Stearns & Co.,* 50 Cal.3d 1118, 1126, 270 Cal.Rptr. 1, 3–4, 791 P.2d 587, 589–90 (1990)).

"Tortious interference with prospective economic advantage is similar . . . with the chief practical distinction being that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." *Id.*  "In addition, a claim for interference with prospective economic advantage requires proof that the defendant not only interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Id.*

Plaintiff fails to state a claim under either theory for a simple reason: he alleges no contract or relationship other than with Google.  *See* Compl. ¶¶ 11–12.  Indeed, Plaintiff's interference claims are premised on interference in "agreements between the Plaintiff and the Defendant." *Id.* at ¶ 51.  It is well established that "[t]he tort duty not to interfere with [a] contract falls only on strangers." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 459 (Cal. 1994).

Moreover, because Google "lawfully exercised" its rights under the Agreement, Plaintiff has "no claim for intentional interference with prospective economic advantage, which requires plaintiffs to demonstrate that [the defendant] committed a legal wrong independent from the interference." *Fresno Motors*, 771 F.3d at 1130.

**CONCLUSION**

For the reasons set forth above, the Court should dismiss Plaintiff's claims against Google in their entirety, with prejudice, for failure to state a claim under Rule 12(b)(6).

Dated:  June 25, 2021

Respectfully submitted,

By:   */s/ Matt Dow*
      Matt Dow
      State Bar No. 06066500
      mdow@jw.com

      JACKSON WALKER LLP
      100 Congress Avenue, Suite 1100
      Austin, Texas 78701
      (512) 236-2230– Telephone
      (512) 236-2113 – Facsimile

      -and-

      Shannon Zmud Teicher
      State Bar No. 24047169
      steicher@jw.com
      Eric D. Wong
      State Bar No. 24102659
      ewong@jw.com

      JACKSON WALKER LLP
      2323 Ross Avenue, Suite 600
      Dallas, Texas 75201
      (214) 953-6116 – Telephone
      (214) 661-6816 – Facsimile

      ATTORNEYS FOR DEFENDANT
      GOOGLE LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of June, 2021, a true and correct copy of this Motion to Dismiss has been served upon Plaintiff Ernest Kanevskiy, who is the only other party, is a non-CM/ECF participant, and is appearing *pro se*, via certified mail, return receipt requested, to Plaintiff's last known address: 14812 Avery Ranch Blvd., Apt. 19, Austin, Texas 78717, as allowed by Federal Rule of Civil Procedure 5(b)(2)(C).

/s/ *Shannon Zmud Teicher*
 Shannon Zmud Teicher

**DEFENDANT'S MOTION TO DISMISS**                                    **Page 21**